[Civ. No. 25753. Second Dist., Div. Three. Sept. 27, 1961.]

ARL JOHN McCORMICK, Petitioner, v. MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL DISTRICT, Respondent.

Harold J. Ackerman and Harvey E. Byron for Petitioner.

Harold W. Kennedy, County Counsel (Los Angeles), Donald K. Byrne, Deputy County Counsel, Roger Arnebergh, City Attorney, and William E. Doran, Deputy City Attorney, for Respondent.

SPARKS, J. pro tem.*—Petitioner, Arl John McCormick, was convicted in respondent court after trial by jury of the crime of violation of section 23102 of the Vehicle Code (misdemeanor drunk driving). He was sentenced to imprisonment for 10 days in the Los Angeles City Jail and to pay a fine in the sum of $250. A motion for new trial having been denied, appeal was taken to the Appellate Department of the Los Angeles Superior Court. On July 31, 1961, said appellate department gave its decision affirming the judgment of conviction and the order denying motion for new trial. Petitioner now seeks a writ of prohibition to restrain respondent court from enforcing its said judgment of conviction, and also for a writ of habeas corpus.

Petitioner asserts his right to the issuance of an extraordinary writ on the ground that his conviction was illegal and violative of constitutional due process. He bases this contention upon the alleged denial, by the arresting officers, of an opportunity to telephone his physician for the purpose of obtaining a timely sample of his blood in order to determine its alcoholic content.

There remaining no judicial function to be performed by respondent court, the petition, insofar as it seeks to restrain respondent court, must be denied. Prohibition is a preventative rather than a corrective remedy. The writ issues

---

*Assigned by Chairman of Judicial Council.

only to restrain the commission of a future act and not to undo an act already done. (*Lambert* v. *Municipal Court*, 179 Cal.App.2d 682 [3 Cal.Rptr. 895]; *Donner Finance Co.* v. *Municipal Court*, 28 Cal.App.2d 112, 114 [81 P.2d 1054]; *Melancon* v. *Superior Court*, 42 Cal.2d 698 [268 P.2d 1050].)

The issue of whether a defendant when charged with an offense of which intoxication is the gravamen was afforded a reasonable opportunity to obtain a blood sample may properly be raised by a writ of habeas corpus. (*In re Newbern*, 175 Cal.App.2d 862 [1 Cal.Rptr. 80]; *In re Koehne*, 54 Cal.2d 757, 760 [8 Cal.Rptr. 435, 356 P.2d 179]; *In re Newbern*, 55 Cal.2d 500, 507 [11 Cal.Rptr. 547, 360 P.2d 43].) In the second *Newbern* case, our Supreme Court stated (p. 514), "The denial of an opportunity to procure a blood test on a charge of intoxication prevents the accused from obtaining evidence necessary to his defense and is a denial of due process of law entitling him to his discharge. (*In re Newbern, supra*, 175 Cal.App.2d 862, 864, 866.)" There is no duty or obligation, however, upon law enforcement agencies to cause the sample to be made. (*In re Koehne, supra*.) We quote from the *Koehne* case as follows (p. 759): "It is significant, however, that the law does not impose upon law enforcement agencies the requirement that they take the initiative, or even any affirmative action, in procuring the evidence deemed necessary to the defense of an accused. Rather it is the accused who must act to protect his interests, and it is only when he is denied an opportunity, reasonable under the circumstances, to procure a timely sample of his blood that he can properly claim a denial of due process."

Examining the record in the light of these authorities, petitioner's contention that he made timely request for such an examination appears supported by substantial evidence. In fact, it was not contradicted that he made request of the officers who were transporting him to a police station that he be allowed to see a doctor for a blood test. That he again made the request at the jail when being booked was not denied by the officer in charge, who merely testified that he did not remember. Thus, there is not presented here a situation in which a conflict of evidence was resolved by the trial court against petitioner on the issue of whether he actually had made request that a doctor be called at his expense. It appears rather, from the record, the trial judge took the view that, because the petitioner was given the privilege at the jail to make one telephone call, he had been afforded the reasonable

opportunity required by the law to summon a doctor for the blood sample. This was predicated upon the fact that pursuant to the provisions of Penal Code, section 851.5,[2] petitioner was permitted to make one telephone call after he had been booked. This call was completed to one Margaret Silsby but related solely to obtaining bail for petitioner. No mention was made to her about a blood test or of obtaining a doctor for that purpose. Petitioner contends that prior to calling Mrs. Silsby he had made his request for the doctor. His testimony on direct examination at the trial in this respect was:

"Q. When you got to the booking station, did you have a conversation with the jailer who booked you in? A. Yes, sir.

"The first thing I said was, 'I would like to see a doctor,' and he says, 'We will take care of that after we book you.'

"Q. I see. And what happened after that? A. Later, why, he allowed me to make one call and that is when I called Mrs. Silsby to make the necessary arrangements for bail.

"Q. Did you again ask the jailer that you wanted to get ahold of your doctor? A. Yes, sir, right after I made the phone call. So he says, 'Let's go to the cell.'

"I said, 'Well, what about the doctor? I want to get my doctor so I can have the blood test.' I told him I was going to pay for it. He said, 'Why do you want to see a doctor?'

"I says, 'Because I don't think I am under the influence like the officer said I was.'

"Q. Did the officer make some reply? A. Yes, sir. He said, 'Well, let the arresting officers be the judge of that.'

"Q. Did he at any time permit you to make a phone call to a doctor? A. No, sir.

"Q. Did any officer permit you to make a phone call to a doctor? A. No, sir."

On cross-examination petitioner testified:

---

[2]Section 851.5 in effect at the time of petitioner's arrest and conviction read as follows: "(a) Any person arrested has, immediately after he is booked, the right to make, at his own expense, in the presence of a public officer or employee, at least one telephone call from the police station or other place at which he is booked, completed to the person called, who may be his attorney, employer, or a relative."

It may be of interest to note that this section was amended by the Legislature at its 1961 session and now reads as follows:

"(a) Any person arrested has, immediately after he is booked, and, except where physically impossible, no later than three hours after his arrest, the right to make, at his own expense, in the presence of a public officer or employee, at least two telephone calls from the police station or other place at which he is booked, one completed to the person called, who may be his attorney, employer, or a relative, the other completed to a bail bondsman."

"Q. Sir, you asked the booking officer for permission to call your doctor, is that right? A. I went up and I said, 'I want to see a doctor to have a blood test.'

"Q. What was his reply? A. He said, 'We will take care of that after we book you.'

"Q. And who was the next person you spoke to? A. After I was booked, Mrs. Silsby. They allowed me to make one phone call and he said, 'You can call either your attorney, employer or a relative,' and so Mrs. Silsby, being a friend of the family, I called her. I assumed that, as he told me before, he was going to take care of the doctor and they were very strict as far as limiting you to whom you could make your one phone call.

"After I talked to her then he says he was going to put me in the cell. That is when I asked him again."

The booking officer on duty that evening at the Hollywood Jail, called as a witness for rebuttal, testified:

"Q. You were the booking officer? A. Yes.

"Q. Do you recognize the defendant in the action seated here? A. Yes, sir, I do.

"Q. Do you remember seeing him on that evening? A. I do.

"Q. Do you remember a conversation which you had with him? A. Well, you mean during the booking procedure?

"Q. Yes. A. Yes.

"Q. Do you recall whether the defendant on that evening asked you—strike that—told you that he desired to see a doctor? A. No, I cannot truthfully say I remember that.

"Q. Do you remember him saying to you that night that he wanted a blood test? A. No, sir.

"Q. Do you remember him saying to you that he was willing to pay for a blood test or for a doctor? A. No, sir.

"Q. Do you remember his making a phone call on that evening? A. No, I cannot.

"Q. Is it a matter of procedure, Officer, for the defendant to be permitted to make one phone call? A. Yes, one complete phone call.

"Q. To whom is that? A. To either his attorney, his employer or a relative.

"Q. Do you recall whether or not the defendant on that evening made such a phone call? A. No, sir.

"Q. Do you recall whether the defendant stated to you on that evening that he desired to call his doctor in order to have a blood test taken? A. No.

"Q. *You don't recall or he did not? A. No, I do not recall.*

"Q. Did you state to the defendant on that evening that you would not permit him or in words to that effect or exactly that you would not allow him to call a doctor but that the question of whether he was under the influence or not would be for the arresting officer to determine? A. Could you state that again, please?

"Q. Did you state in exact words, or in effect, to this defendant, that you would not permit him to call his own doctor? A. No, sir.

"Q. Did you tell him in exact words or in effect that the issue of his sobriety would be for the arresting officers to determine and not for any doctor? A. Well, I could have. I don't remember.

"Q. You could have told him what, sir? A. Well, that his sobriety would be up to the arresting officers.

"Q. But did you tell him it would be not an issue for any doctor? A. No." (Italics ours.)

After considering the above-quoted testimony, as well as all of the record before us, we have reached the conclusion that petitioner was, under the circumstances here, deprived of a reasonable opportunity to obtain a timely sample of his blood. The mandatory duty imposed by section 851.5 of the Penal Code, of requiring that an arrested person be permitted at booking to make at least one telephone call cannot *ipso facto* be equated with "reasonable opportunity" to procure a physician. Whether an accused under the restraint of arrest and imprisonment is afforded a fair chance to obtain this type of evidence in his behalf at the only time in which it is available is a question of fact to be determined in each case. The uncontroverted evidence before us showed that petitioner made repeated requests of the officers to call his doctor for the said test; that no blood sample was in fact procured, and the opportunity to obtain this type of evidence was lost. As pointed out in *In re Newbern, supra,* 175 Cal.App.2d 862, 865, the accuracy of blood tests for the purpose of determining intoxication have been recognized in many courts and the test "may serve to exonerate, as well as to convict." (*People* v. *Duroncelay,* 48 Cal.2d 766, 772 [312 P.2d 690].)

A reasonable opportunity having not been made available to petitioner to call the doctor at his own expense, we must hold that there was a denial of due process. (*People* v. *Dawson,* 184 Cal.App.2d Supp. 881 [7 Cal.Rptr. 384].)

The petitioner is ordered discharged.

Shinn, P. J., and Ford, J., concurred.