[Crim. No. 7131.   In Bank.   Oct. 4, 1962.]

In re CLARENCE ARTHUR MARTIN on Habeas Corpus.

Morris Lavine for Petitioner.

Roger Arnebergh, City Attorney (Los Angeles), Philip E. Grey, Assistant City Attorney, and William E. Doran, Deputy City Attorney, for Respondent.

WHITE, J.—Clarence Arthur Martin petitions for a writ of habeas corpus after a jury conviction of driving while under the influence of intoxicating liquor in violation of section

23102 of the Vehicle Code. Petitioner contends that he was denied an opportunity to obtain a timely sample of his blood by the improper conduct of police officers, and that such conduct constituted a denial of due process of law.

It appears that petitioner was arrested at about 5 p. m. on May 22, 1961, and charged with a violation of the aforementioned statute. Bail was posted and petitioner was released shortly after his arrest. Following his conviction petitioner was sentenced to 15 days in the Los Angeles City Jail and ordered to pay a fine of $250. He filed a notice of appeal and was released on bail. Thereafter the judgment of conviction was affirmed by the appellate department of the superior court and a petition for rehearing denied by that court. A motion for stay of remittitur was granted so that petitioner could exhaust his remedy by habeas corpus. Pursuant to our order to show cause petitioner has continued to remain at large on posted bail.

On the afternoon in question Officer Douglas F. Shaw, a motorcycle policeman, noticed a sudden acceleration by a motorist traveling in front of him on a busy street. The officer turned on his siren, pursued the car, and waved the driver over to the curb. The driver, petitioner here, stopped at the curb and walked back to where Officer Shaw had parked. The officer observed that petitioner's ''gait was unsteady'' and therefore put him through several tests for sobriety. The petitioner failed to negotiate these tests to the satisfaction of the officer and the latter, after conferring with some other officers who had arrived at the scene, resolved to make an arrest. As the officer was about to take petitioner to the police station to be booked, the latter asked Officer Shaw to take him to the Los Angeles City Ambulance Center, a distance of two and one half blocks from the point of arrest, to allow him to be medically examined for blood alcohol. Officer Shaw refused to do so and, according to the petition, ''said he would not take the defendant anywhere but jail.''

According to petitioner, when he arrived at the University Police Station he made a request to the booking officer for a blood test, the expense of which petitioner would himself bear. His request was denied. Bail was posted and petitioner was released; he was in the station for a total of about 30 minutes.

Thereafter, petitioner telephoned his personal physician, Dr. Samuel Arnold, and asked the doctor to arrange a blood test for him immediately. The doctor said he could not perform the test since all private laboratories were closed. He sug-

gested that petitioner ask for the test through the police department.

Petitioner then went to the municipally owned Receiving Hospital and asked the nurse on duty for a blood test. The nurse called the doctor in attendance who stated that he could give the test only if he was authorized to do so by the Los Angeles Police Department. It is alleged by petitioner that his wife then telephoned the police department and asked for authorization for the test. Apparently the police officer declined to give such authorization.

Following this last denial of a test, petitioner's wife called Morningside Hospital and talked to the doctor in charge. Again the reply was that the test could be made only with the authorization of the police department. Petitioner alleges he was therefore frustrated once more in his attempt to secure a blood test. (It does not appear from the petition whether Morningside is a municipally owned hospital.)

At the trial petitioner's counsel moved to dismiss the case on the grounds the defendant had been denied due process. In support thereof counsel cited the decision of *In re Newbern* (1959) 175 Cal.App.2d 862 [1 Cal.Rptr. 80], and in denying the motion, the trial judge stated: "It appears that the principle enunciated . . . in the *Newbern* matter on this subject provides that for a person who has been arrested . . . makes a demand for [*sic*] at his own expense to secure a doctor to provide a blood test and that request is refused; that he then has been deprived of due process of law. . . .

"Now, it appears from the evidence that we have in this matter that Mr. Martin, the defendant, made a request that he be given a blood test; that he offered to pay for it. Now, that, of course, is not the same as demanding that he be given an opportunity to summon a doctor at his own expense to secure a blood test."

It would not appear that the petitioner's rights were violated when Officer Shaw denied petitioner's request that he be taken to a hospital nearby to be given a blood test prior to being taken to the police station. In discussing whether an arresting officer has a duty to permit his prisoner to telephone a physician prior to being "booked" we stated in *In re Koehne* (1960) 54 Cal.2d 757 [8 Cal.Rptr. 435, 356 P.2d 179] at page 760: "While . . . one accused of being drunk is entitled to a reasonable opportunity to procure a timely sample of his blood at his own expense, it cannot be reasonably held that, even though such a request is made to the

arresting officer, it is the latter's duty while escorting the prisoner to a police call box or otherwise at the scene of arrest, to permit his prisoner to telephone a physician." Mindful of this principle, it would be unreasonable to impose on an arresting officer an obligation to accede to various requests made by his prisoner, including a request for a blood test. As we stated in *Koehne*: "The request should be made at the police station when the arrested person is 'booked'. . . ." (P. 760.)

It is a matter of common knowledge that the intoxicating effect of alcohol diminishes with the passage of time; hence, the probative value of a blood test diminishes as well. In a short period of time an intoxicated person may "sober up" sufficiently to negate the materiality of a blood test where the sample has not been timely withdrawn. (*In re Newbern, supra,* 175 Cal.App.2d 862, 866.) In the case now engaging our attention petitioner was released within minutes after his "booking" at the police station. No meritorious claim can be made that he could not, at that time, have obtained a timely sampling if unhampered. Moreover, police officers are not required to take the initiative or even to assist in procuring evidence on behalf of a defendant which is deemed necessary to his defense. (*In re Koehne, supra,* 54 Cal.2d 757, 759; *McCormick* v. *Municipal Court,* 195 Cal.App. 2d 819, 821 [16 Cal.Rptr. 211]; *In re Newbern, supra,* 175 Cal.App.2d 862, 866.) But in no event can duly constituted authority hamper or interfere with efforts on the part of an accused to obtain a sampling of his blood, without denying to him due process of law. We are persuaded to such conclusion in any instance where the conduct of the authorities, whether through affirmative action or by the imposition of their rules and regulations, imposes any material obstacle in the path of the accused. Nor are we impressed that an accused, as perhaps in the instant case, might have reached his goal by pursuing a different course. It is sufficient if, in seeking to establish the fact of the alcoholic content of his blood, the authorities, by their actions or regulations, frustrate his reasonable efforts designed to produce probative evidence.

In the instant case police involvement did not stop with petitioner's release. The latter made a reasonable and sincere effort to obtain blood tests through two hospitals, at least one municipally owned, and was frustrated in that effort either because of regulations imposed by the authorities or because police department permission was withheld. Thus, by a passive act of refusal the authorities were able to frustrate the

efforts of petitioner to obtain evidence necessary for his defense.

A refusal by the police under the foregoing circumstances is analogous to a suppression of evidence and violative of due process of law.

Petitioner is ordered discharged from custody.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., and Tobriner, J., concurred.

McComb, J., dissented.