[Crim. No. 4114. First Dist., Div. One. Oct. 22, 1962.]

In re MABEL MAY HOWARD on Habeas Corpus.

*Assigned by Chairman of Judicial Council.

Stanley Mosk, Attorney General, John S. McInerny and Robert R. Granucci, Deputy Attorneys General, for Appellant.

Robert C. Cook for Respondent.

BRAY, P. J.—The People appeal from an order upon return of writ of habeas corpus discharging petitioner from custody.

### QUESTION PRESENTED

Was petitioner denied due process of law in the refusal of her request that her physician be notified of her arrest so that he could give her a blood test?

### RECORD

On July 21, 1961, petitioner was arrested in Lower Lake, Lake County, by State Highway Patrol Officer Lee, who charged her with violation of section 23102, Vehicle Code (misdemeanor drunk driving). She was booked at the county jail at Lakeport. A complaint was filed in the Justice Court of Lower Lake Judicial District charging her with violation of the above section. She was released on bail that night. On October 3 she filed in Lake County Superior Court a peti-

tion for writ of habeas corpus on the ground that she had been denied due process of law by the refusal of her request to be allowed a blood alcohol test by her own physician. After a hearing, the court ordered her discharge.

Petitioner was arrested at about 5:30 or 5:40 p. m. Her car was left at the place of arrest. Officer Lee first drove to the Howard residence. He then stopped by his own home where he picked up his wife to act as matron. Petitioner was booked at the Lakeport County Jail at approximately 7:30 p. m., almost two hours after the arrest. Prior to being booked petitioner made no requests of any nature. On being booked she requested that her personal physician, Dr. Charles B. Shaap, be brought to the county jail in order to give her a blood test. He lives and practices in Monte Rio, which is about 1 hour and 45 or 55 minutes driving time from Lakeport.

It is not clear from petitioner's testimony whether she claims that she asked to be permitted to call the doctor herself. The officer testified that she did not do so. The trial judge in his memorandum opinion interpreted her testimony as not requesting the use of the telephone herself. In any event, she made it clear that she desired that her physician be contacted for the purpose of having him come to Lakeport and make a blood test. She offered to pay the expenses in connection therewith. The officer refused petitioner's request because of the distance involved and the time elapsing since the arrest. Officer Lee testified that instead he offered to take petitioner to the Lakeside Hospital, 10 minutes from the county jail, where she could select a doctor of her own choice to give her a blood test. This offer she did not accept. Officer Lee testified further that petitioner, when told that they did not have the facilities to bring the doctor to Lakeport, replied that "she would fly him here." Petitioner testified that the officer did not mention offering to take her to the hospital. About 8 o'clock that evening she was released on bail. After her release, she made no effort to procure a blood test.

Dr. Carl Aagaard, an expert pathologist, testified concerning blood tests to determine the quantity of alcohol in the blood. He stated that a sample of blood taken five hours after the time to which the inquiry relates would still have probative value if the alcohol content in the blood had not reached zero.

## DUE PROCESS

The Attorney General contends that petitioner's request was unreasonable in that she was only entitled to a reasonable

opportunity to procure a blood sample, and that her request that her physician, who was practically two hours driving time away, be contacted for this purpose, was unreasonable, particularly in view of the officer's offer to take her to the county hospital to get a doctor of her own choice; therefore, he contends, there was not a denial of due process.

In *In re Newbern* (1959) 175 Cal.App.2d 862, 866 [1 Cal. Rptr. 80], the defendant asked the arresting officers for an intoximeter test and was informed that such tests were not given to a person arrested for being drunk in public view. He then requested that a private physician be brought in from the outside at his expense to take a sample of his blood to determine the percentage of alcohol in it. This request was denied. The court in holding that the refusal to permit the defendant to call a doctor was unreasonable and a denial of due process, said: "It is a matter of common knowledge that the intoxicating effect of alcohol diminishes with the passage of time. In a matter of a few hours an intoxicated person may 'sober up.' The efficacy of a blood test depends upon its being made as soon as possible after the time of the offense. To be of any probative value the test must be 'near' to the offense in point of time. If it is not taken promptly after the arrest, it proves nothing.

"While there is no duty or obligation on the law enforcement agencies to give a blood test under these circumstances, the arrested person, on his own behalf, should be entitled to a reasonable opportunity to attempt to procure a timely sample. To refuse him such reasonable opportunity is to deny him the only opportunity he has to defend himself against the charge."

The courts of California have often pointed out that "the accuracy of blood tests for the purpose of determining intoxication have been recognized by many courts and the test 'may serve to exonerate, as well as to convict.' (*People* v. *Duroncelay*, 48 Cal.2d 766, 772 [312 P.2d 690].)'" (*McCormick* v. *Municipal Court* (1961) 195 Cal.App.2d 819, 824 [16 Cal. Rptr. 211].)

Similar facts compelled the court in *People* v. *Dawson* (1960) 184 Cal.App.2d Supp. 881, 882-883 [7 Cal.Rptr. 384], to "hold that it was error to deny the defendant a reasonable opportunity to call a doctor of his own choice and at his own expense to give him a blood test at a time when he was suspected of being under the influence of intoxicating liquor." In *Dawson* the evidence indicated not that the defendant had

requested to be permitted to call his own doctor but merely that he requested that his doctor be called.

In *In re Koehne* (1960) 54 Cal.2d 757 [8 Cal.Rptr. 435, 356 P.2d 179], the Supreme Court defined the necessary acts on the part of the accused in order to preserve his rights. There the defendant while on the way to the police station indicated that he wanted to be given a blood test. The arresting officer informed him that he could arrange at his (the defendant's) expense for the blood test when he arrived at the station. The court stated that there was no indication from the record that the defendant was in a position or was willing to bear the expense of calling his doctor. Nor did it appear that he made known his wishes at the time of "booking" at the jail but only on the way to the station when arrangements for the attendance of a doctor could not reasonably be made.

▉ The court in summary pointed out what would have been a reasonable request under the circumstances (p. 760): "While, as stated, one accused of being drunk is entitled to a reasonable opportunity to procure a timely sample of his blood at his own expense, it cannot be reasonably held that, even though such a request is made to the arresting officer, it is the latter's duty while escorting the prisoner to a police call box or otherwise at the scene of the arrest, to permit his prisoner to telephone a physician. The request should be made at the police station when the arrested person is 'booked' and where telephonic facilities for making such a call are available."

In the second *Newbern* case (1961) 55 Cal.2d 508 [11 Cal. Rptr. 551, 360 P.2d 47], the court pointed out that the defendant was asked on the way to the police station if he wished to have a blood test taken. He did not respond to the inquiry and only after he was in his cell did he request of four unidentified policemen that he be given a blood test.

▉ The court held that the availability of an opportunity is all that due process requires in the preservation of an accused's rights. (P. 511.) The requests of persons of "unknown responsibilities when substantially more time had elapsed following the arrest" after refusing opportunities for a timely sampling of his blood cast considerable doubt on the defendant's good faith in making these claimed demands.

In *McCormick* v. *Municipal Court, supra,* 195 Cal.App.2d 819, the defendant was given the opportunity at the jail to make one phone call, to an attorney, employer, or relative. He made a call to a family friend in order to obtain bail.

It was his understanding that the police would also permit a call to a doctor. He was, however, not allowed another call. The trial court felt that because the defendant was given the privilege of making one phone call, he had been afforded the reasonable opportunity required by the law to summon a doctor for the blood sample. However, the appellate court ruled that the defendant had been deprived of a reasonable opportunity to obtain a timely sample of his blood. ''The mandatory duty imposed by section 851.5 of the Penal Code, of requiring that an arrested person be permitted at booking to make at least one telephone call cannot *ipso facto* be equated with 'reasonable opportunity' to procure a physician. Whether an accused under the restraint of arrest and imprisonment is afforded a fair chance to obtain this type of evidence in his behalf at the only time in which it is available is a question of fact to be determined in each case.''

The Attorney General takes the position that it was unreasonable to want to call a doctor who was almost two hours distant for the reason that, as pointed out in the first *Newbern* case, *supra* (175 Cal.App.2d at p. 866) a blood test taken too long after the arrest may not have any probative value because the alcohol content in the blood stream diminishes with time and '' [i]n a matter of a few hours an intoxicated person may 'sober up.' ''

Here petitioner testified that she was released from the county jail in from 20 minutes to a half hour after being brought there. She could have then phoned to her doctor, and had he come to Lakeport, the test would have been made not over a half hour later than had she contacted him before release, and within the time which Dr. Aagaard testified would have been of probative value. But, more important, if she were really serious about a blood test, she or her husband, who was with her at the jail, could have contacted a Lakeport doctor and have had a blood test long before her Monte Rio doctor could have arrived.

Petitioner made no attempt to avail herself of an opportunity which was still a reasonable one, to have a blood test taken. It is not reasonable to relieve her of a criminal charge in view of her failure to grasp the opportunity which was then hers. There is no showing that a blood test taken by her own doctor had she called him on release would not have had probative value. Dr. Aagaard testified that a blood test taken as much as five hours after the arrest would still have probative value, and had her doctor gone to Lakeport immediately

after a call upon her release, any test that he might make would be within the five-hour period. Perhaps in degree the value might not have been as great as if taken a half hour sooner, but would that difference in degree justify her being completely freed of the criminal charge? We do not think so, particularly as we have pointed out that the power was hers to obtain a blood test much earlier than her own doctor could make one.

While, of course, a prisoner may insist upon obtaining his own doctor rather than selecting another, the availability of an opportunity to obtain a doctor whose test, because of the time element, would be more valuable, may be considered in determining whether actually the prisoner has been deprived of due process.

In the second *Newbern* case, *supra,* 55 Cal.2d 508, 511, the court said that the availability of a reasonable opportunity to obtain a timely sampling of his blood is all that due process requires in the preservation of an accused's rights. As will appear from the discussion hereafter of the latest case on the subject, *In re Martin* (1962) 58 Cal.2d 509 [24 Cal. Rptr. 833, 374 P.2d 801], petitioner had that opportunity, if not from the offer to take her to the nearby hospital, at least upon her early release from custody. In the second *Newbern* case, the court pointed out that possibly the defendant was not really interested in having his blood tested at or near the time of arrest. Such a conclusion might well be drawn concerning petitioner in the case at bench.

In *Martin* the defendant had been arrested for violation of section 23102, Vehicle Code (drunken driving). As the arresting officer was about to take him to the police station to be booked, Martin asked to be taken to the Los Angeles City Ambulance Center, a distance of two and a half blocks from the point of arrest, to allow him to be medically examined. The officer refused. On the authority of *In re Koehne, supra,* 54 Cal.2d 757, 760, the Supreme Court held that the proper place for such a request to be made is at the time of booking at the police station and not before, and the refusal of a request prior to that time does not deprive the prisoner of due process. However, Martin made a similar request of the booking officer, which request was denied. The effect of this refusal is not discussed, the court apparently assuming that because the time Martin was in the station was only about 30 minutes (as in our case), Martin was then free to make his own arrangements for a blood test. At any rate the court apparently did

not consider that the second refusal under the circumstances deprived the defendant of due process. The court did hold that Martin was so deprived, but only because of what happened after he was released from custody. He telephoned his doctor, who said that he could not perform the test because all private laboratories were then closed. Martin then went to the municipally-owned receiving hospital and asked the nurse on duty for a blood test. The nurse called the doctor in attendance who said he could give the test only if authorized by the police department to do so. Mrs. Martin phoned the police department for such authorization, which was denied. Mrs. Martin then called another hospital (apparently a private hospital) and was informed by the doctor in charge that the test could only be made on authorization of the police department. It was this refusal of the police department to enable Martin to obtain a blood test at these hospitals which the court held denied him due process as the refusals placed obstacles in Martin's efforts to obtain evidence. The significant part of the decision as it would apply to this case is the following: ". . . petitioner was released within minutes [30 minutes as in our case] after his 'booking' at the police station. *No meritorious claim can be made that he could not, at that time, have obtained a timely sampling if unhampered.*" (P. 512; emphasis added.) In the instant case petitioner upon her release was in nowise hampered in any effort that she might have made to secure a blood test. But she made no such effort. Police involvement stopped with her release. (See *Martin, supra,* p. 512.)

Where the sobriety of a person arrested is in question he has a right to obtain a blood test for alcohol. In the cases above cited holding that the particular defendant was denied due process, it was because the police made it impossible for the particular defendant to obtain such a test. In the second *Newbern* case, *supra,* no attempt was made by Newbern to secure such a test on his own. The court held that therefore there was no denial of due process.

 Likewise, in the instant case, there was no denial of due process in the refusal to arrange for a blood test by petitioner's own doctor for two reasons: (1) Petitioner had ample opportunity to contact her doctor after her release; and (2) she was offered by the officer an ample opportunity to have a test taken by a doctor of her own choice at Lakeport. This is the exact opposite of the situation in the *Martin* case. In that case the police prevented the prisoner from getting a

blood test; here they offered to help her get one and she prevented herself from getting one. Hence there was no denial of due process.

 After all, the purpose of a blood test is to determine the alcohol content in the blood. All the doctor usually does is take a blood sample (a nurse can also take it), and turn it over to a laboratory for analysis. The laboratory makes the determination of the alcohol content—not the doctor. What difference can it make if one's own doctor or some other doctor or any doctor takes the blood sample? The analysis is not made by him but by a laboratory. It is the denial of the right to a blood test that would constitute denial of due process, not the denial of a request for one's own doctor to take the blood sample.

True, in many cases, a person wants his own doctor to administer a treatment or make a diagnosis. But here neither a treatment nor a diagnosis is involved. It is a simple matter of some doctor or nurse taking a sample of blood to turn over to a laboratory for analysis.

Under all the circumstances, petitioner was not denied due process. Petitioner contends that the prosecution has changed its theory on appeal from that in the court below. The record does not bear out this contention.

The order is reversed.

Sullivan, J., and Molinari, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 19, 1962.