[Crim. No. 11195.   Second Dist., Div. Three.   Mar. 8, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK ALBERT LANE, Defendant and Appellant.

Jacques Leslie, Daniel A. Schiffer and Lawrence Teplin for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Alan R. Wolen, Deputy Attorneys General, for Plaintiff and Respondent.

DRUCKER, J. pro tem.*—In a nonjury trial defendant was convicted of violation of section 23101 Vehicle Code. Upon consideration of the probation report the court suspended proceedings and granted probation for a period of two years. Defendant appeals from the judgment (order granting probation) upon the grounds that the unauthorized extraction of blood while he was unconscious was: (1) An unreasonable search and seizure, (2) a violation of his privilege against self-incrimination, and (3) a violation of his right to counsel, to remain silent, and to be cautioned that any evidence given could be used against him.

It appears from the evidence that on July 6, 1964, about 8 p.m. the defendant entered an off ramp of the Hollywood Freeway, proceeded diagonally across the freeway in the wrong direction and collided with another vehicle. The defendant was rendered unconscious, and two people in the other vehicle were injured. A police officer arrived at the scene almost immediately after the accident happened, saw the defendant lying unconscious on the freeway. The defendant had a strong odor of alcohol on his breath. In the car driven by the defendant the officer found broken glass from three vodka one-half pint bottles, the neck of one of the bottles was still sealed. He detected a strong odor of alcohol within the interior of the car. The defendant was transported to the receiving hospital. At the time the officer arrived at the hospital 20 minutes later, the defendant was still unconscious. While the

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

defendant was being medically treated, the officer still detected a strong odor of alcohol on defendant's breath. At this point he "mentally" placed defendant under arrest for driving under the influence of alcohol. At the request of the officer the doctor withdrew a blood specimen from the arm of the unconscious defendant, in a medically approved manner.

■ A forensic chemist testified that the specimen contained .19 percent blood alcohol. This is indicative that the defendant was under the influence of intoxicating liquor. The defendant remained unconscious for a period of approximately five days.

Supportive of the decision of the trial court, appropriate to the facts of the instant case, and determinative of the issues before us, is the case of *People* v. *Duroncelay,* 48 Cal.2d 766 [312 P.2d 690], in which the Supreme Court stated at pages 770-772, as follows: "It is settled by our decision in *People* v. *Haeussler,* 41 Cal.2d 252, 257 [260 P.2d 8], that the admission of the evidence did not violate defendant's privilege against self-incrimination because the privilege relates only to testimonial compulsion and not to real evidence. We also held in the *Haeussler* case that the taking of the defendant's blood for an alcohol test in a medically approved manner did not constitute brutality or shock the conscience and that, therefore, the defendant had not been denied due process of law under the rule applied in *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]. This holding is in accord with the recent decision of the United States Supreme Court in *Breithaupt* v. *Abram,* 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448], where blood for an alcohol test was taken by a doctor while the defendant was unconscious. The court pointed out that blood tests had become routine in everyday life and concluded that 'a blood test taken by a skilled technician is not such "conduct that shocks the conscience," *Rochin, supra* (342 U.S. at 172), nor such a method of obtaining evidence that it offends a "sense of justice," *Brown* v. *Mississippi,* 297 U.S. 278, 285, 286 [56 S.Ct. 461, 80 L.Ed. 682].' . . .

"The question remains as to whether the taking of defendant's blood constituted an unreasonable search and seizure in violation of his constitutional rights. We did not decide that question in *People* v. *Haeussler,* 41 Cal.2d 252 [260 P.2d 8], because its determination was not necessary in view of the rule then followed in this state that illegally obtained evidence was admissible. Nor was it decided in *Breithaupt* v. *Abram,* 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448], for the reason

that New Mexico, where the judgment under review had been entered, permitted introduction of such evidence. The question is now squarely before us, however, since, subsequent to our decision in the *Haeussler* case, we adopted the exclusionary rule in *People* v. *Cahan,* 44 Cal.2d 434, 445 [282 P.2d 905].

"It is obvious from the evidence that, before the blood sample was taken at the request of the highway patrolman, there was reasonable cause to believe that defendant had committed the felony of which he was convicted, and he could have been lawfully arrested at that time. (Pen. Code, § 836.) There is no claim that defendant was not arrested within a reasonable time or that the arrest was not made on the basis of the facts known to the officer who investigated the accident, and we must presume that there was a lawful arrest, in the absence of any showing to the contrary. (*People* v. *Farrara,* 46 Cal.2d 265, 268-269 [294 P.2d 21] ; *People* v. *Beard,* 46 Cal.2d 278, 280 [294 P.2d 29] ; see Code Civ. Proc., § 1963, subds. 15, 33.) Where there are reasonable grounds for an arrest, a reasonable search of a person and the area under his control to obtain evidence against him is justified as an incident to arrest, and the search is not unlawful merely because it precedes, rather than follows, the arrest. (*People* v. *Simon,* 45 Cal.2d 645, 648-649 [290 P.2d 531] ; *People* v. *Boyles,* 45 Cal. 2d 652, 655 [290 P.2d 535] ; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855].) Under the circumstances, a search, for example, of defendant's pockets or his automobile to obtain additional evidence of the offense would have been proper, regardless of whether he consented thereto. The question to be determined here is whether the taking of a sample of his blood for an alcohol test was a matter of such a different character that it must be regarded as an unreasonable search and seizure.

"As we have seen, the extraction of defendant's blood was accomplished with medical precautions by a registered nurse, and it is settled that such conduct is not brutal or shocking. Defendant does not challenge the accuracy of the alcohol test, and it merits emphasis that, while the accounts of eyewitnesses are often uncertain and conflicting on the issue of intoxication, blood alcohol tests are so subject to reliable scientific analysis that 23 states have enacted statutes sanctioning the use of such tests. (See *Breithaupt* v. *Abram,* 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448, 451-452, fn. 3].) Nor should it be ignored that a test of this kind may serve to exonerate, as well as to convict.

"The incidence of death and serious injury on the highways has undeniably assumed tragic dimensions and has been due in a significant degree to the effects of alcohol upon drivers. (See National Safety Council Accident Facts—1955, pp. 43-71.) So long as the measures adopted do not amount to a substantial invasion of individual rights, society must not be prevented from seeking to combat this hazard to the safety of the public. The extraction of blood for testing purposes is, of course, an experience which, every day, many undergo without hardship or ill effects. When this fact, together with the scientific reliability of blood alcohol tests in establishing guilt or innocence, is considered in the light of the imperative public interest involved, the taking of a sample for such a test without consent cannot be regarded as an unreasonable search and seizure where, as here, the extraction is made in a medically approved manner and is incident to the lawful arrest of one who is reasonably believed to have violated section 501 of the Vehicle Code.

"We conclude that there was no violation of defendant's rights and that the results of the alcohol test were properly admitted in evidence."

The defendant urges that by reason of *Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], and *Malloy* v. *Hogan*, 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653], the Fourth and Fifth Amendments to the United States Constitution are obligatory upon the states through the due process clause of the Fourteenth Amendment and, therefore, he contends, *Breithaupt* v. *Abram, supra,* 352 U.S. 432, and *People* v. *Duroncelay, supra,* 48 Cal.2d 766, are no longer authorities for the admissibility of nonconsensual blood test evidence.

Although until *Mapp* v. *Ohio, supra,* California was not bound by the due process clause to apply the exclusionary rule and although *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], expressly reserved to this State the power to reject "needless limitations" on the right of search and seizure developed by the federal decisions—a reservation no longer permissible—we do not believe *Duroncelay* runs afoul of defendant's rights under the Fourth Amendment, as developed in the federal courts. In this connection we take note of the statement by the majority in *Ker* v. *California*, 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726], that "*Mapp* did not attempt the impossible task of laying down a 'fixed formula' for the application in specific cases of the constitutional prohibition against unrea-

sonable searches and seizures; . . ." *Id.*, pages 31-32. The court further said: "This Court's long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustian application is carried forward when that Amendment's proscriptions are enforced against the States through the Fourteenth Amendment." *Id.*, page 33.

■ The evidence clearly indicates the officer had reasonable cause to believe that the defendant had committed the felony of which he was convicted. Obviously, because of his physical condition, the defendant was not taken into custody. However, the officer "mentally" placed the defendant under arrest for driving while under the influence of intoxicating alcoholic beverages, and then requested the doctor to extract the blood sample. The evidence at issue was the product of a search incident to a lawful arrest, and its admissibility under these circumstances was not dependent upon the procurement of a search warrant. The admissibility of such evidence meets both federal and state constitutional standards. (*Ker* v. *California, supra,* at p. 34; *United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 187, 94 L.Ed. 543] ; *People* v. *Duroncelay, supra.*)

*Mapp* affects *Breithaupt* v. *Abram, supra,* only to the extent of the court's observation in *Breithaupt* that the claim of counsel that the result of the blood test as being in violation of the Fourth and Fifth Amendments through the Fourteenth Amendment afforded him no aid in view of *Wolf* v. *Colorado,* 338 U.S. 25 [69 S.Ct. 1359, 93 L.Ed. 1782] and *Twining* v. *New Jersey,* 211 U.S. 78 [29 S.Ct. 14, 53 L.Ed. 97]. But, unaffected by *Mapp* is the statement of the court in *Breithaupt,* at pages 435-436, as follows: "Te [*sic*] be sure, the driver was unconscious when the blood was taken, but the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right; and certainly the test was [*sic*] administered here would not be considered offensive by even the most delicate. Furthermore, due process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct. It is on this bedrock that this Court has established the concept of due process. The blood test procedure has become routine in our everyday life." (*Breithaupt* v. *Abram, supra,* at pp. 435-436.)

In recognition of the fact that blood test evidence should

be equally available to prove innocence as well as guilt, it has been held to be a denial of due process to deny one accused of being under the influence of intoxicating liquor a reasonable opportunity to procure a timely sample of his blood at his own expense. (*In re Newbern,* 175 Cal.App.2d 862 [1 Cal.Rptr. 80, 78 A.L.R.2d 901] ; see *In re Howard,* 208 Cal.App.2d 709 [25 Cal.Rptr. 590], and cases therein cited; *People* v. *Bellah,* 237 Cal.App.2d 122, 127, 128 [46 Cal.Rptr. 598].)

In *People* v. *Huber,* 232 Cal.App.2d 663 [43 Cal.Rptr. 65], in which the factual situation was similar to the instant case, the court also upheld the right to extract a blood sample, relying ". . . primarily upon the 'emergency' and 'exceptional circumstances' rule applied in both federal and state courts" (p. 673), and stated at page 670, as follows: "We view the circumstances surrounding the withdrawal of the blood sample in the light of the known facts 'that the intoxicating effect of alcohol diminishes with the passage of time' (*In re Martin,* 58 Cal.2d 509, 512 [24 Cal.Rptr. 833, 374 P.2d 801]), the 'scientific reliability of blood alcohol test', 'to exonerate, as well as to convict' . . . (*People* v. *Duroncelay,* 48 Cal.2d 766, 770-771 [312 P.2d 690]), as establishing such 'emergency' and 'exceptional circumstances' as would justify the officer's conduct in the absence of a warrant, consent or arrest."

Neither does *Malloy* v. *Hogan, supra,* 378 U.S. 1, detract from the opinions of *Duroncelay, supra,* and *Haeussler, supra,* that the admission of evidence of the results of a blood test in the absence of defendant's consent did not violate his privilege against self-incrimination because the privilege relates only to testimonial compulsion. In discussing this privilege against self-incrimination in *People* v. *Haeussler, supra,* 41 Cal.2d 252 at pages 256, 257, the Supreme Court stated as follows: "However, the privilege is guaranteed by the Constitution of this state, which declares that '[n]o person shall . . . be compelled, in any criminal case, to be a witness against himself.' (Cal. Const. art. I, § 13.) Reviewing the scope and purpose of that provision, this court said in *People* v. *Trujillo,* 32 Cal.2d 105 [194 P.2d 681] : 'Wigmore, in an exhaustive and scholarly discussion of the history and policy behind the provision of the federal Constitution, which is substantially the same as the California mandate, concludes that the object of the protection "is the employment of legal process to *extract from the person's own lips* an admission of his guilt, which will thus take the place of other evidence. . . .

" ' "In other words, it is not merely any and every compulsion that is the kernel of the privilege, in history and in the

constitutional definitions, but *testimonial compulsion.*' ' (P. 112 [of 32 Cal.2d].)

"This statement of the rule is consistent with that of the United States Supreme Court (*Holt* v. *United States*, 218 U.S. 245 [31 S.Ct. 2, 54 L.Ed. 1021]; *United States* v. *White*, 322 U.S. 694 [64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R. 1202]) and the courts of other jurisdictions which, in analogous factual situations, have concluded there was no violation of the privilege. (*State* v. *Green*, 121 S.C. 230 [114 S.E. 317] [placing defendant's foot in footprint found at scene of crime]; *State* v. *McLaughlin*, 138 La. 958 [70 So. 925] [scrapings taken from beneath accused's fingernails]; *Biggs* v. *State*, 201 Ind. 200 [167 N.E. 129, 64 A.L.R. 1085] [removing defendant's shoes to match footprints]; *State* v. *Aspara*, 113 La. 940 [37 So. 883] [removing defendant's clothing for comparisons and tests]; *Ash* v. *State*, 139 Tex. Crim. Rep. 420 [141 S.W.2d 341] [giving accused an enema to recover swallowed jewelry]; *United States* v. *Kelly*, 55 F.2d 67 [taking fingerprints of accused]; see anno. 164 A.L.R. 967; Inbau, Self Incrimination [1950].)

"Evidence is not obtained by testimonial compulsion where it consists of a test of blood taken from an accused. It is not a communication from the accused but real evidence of the ultimate fact in issue—the defendant's physical condition. [Citations.]" (See also *People* v. *Lopez*, 60 Cal.2d 223, 243-244 [32 Cal.Rptr. 424, 384 P.2d 16].)

█ Defendant also asserts that the unauthorized extraction of blood is in violation of the Sixth Amendment, in that, prior thereto he was not accorded the right to assistance of counsel. He relies mainly upon *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The *Dorado* rule is applicable to incriminating statements of the accused resulting in prejudicial error, and not to real evidence obtained in a search incident to an arrest. (See *People* v. *Bellah, supra,* 237 Cal.App.2d 122.)

Judgment affirmed.

Ford, J., and Kaus, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 4, 1966.