[Crim. No. 13859.   Second Dist., Div. One.   Dec. 22, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. VERNON PHILLIP MACKNIC, Defendant and Appellant.

Albert I. Kaufman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gerald H. Genard, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was found guilty of driving a vehicle while under the influence of narcotics (§ 23105, Veh. Code). Motion for a new trial was denied and the court ordered a petition to be filed in department 95 under section 3051, Welfare and Institutions Code. Upon his return for further criminal proceedings, defendant was sentenced to the state prison, the term to run concurrently with any prior incompleted sentence. He appeals from the judgment.

Officer Key, a narcotics officer, had information from Officer Marinelli, Glendale Police Department that a person named Macknic would be around 5th and Burlington in Los Angeles between 10:30 and 10:45 a.m.; possibly a narcotic buy could be made from him; Macknic would be driving a 1954 two-tone white over blue Chevrolet; and he was wanted for parole violation on a narcotics offense. Officer Key and other law enforcement officers, and State Narcotic Agent Feldman in a separate vehicle, watched the location and around 10:45 a.m. saw defendant driving the Chevrolet. When he stopped for a red signal, Agent Feldman got out of his car and approached defendant on the driver's side; as he neared the Chevrolet defendant started up the car, turned it to the left in the direction of the agent, forcing him to jump out of the way, and drove away. In his car Officer Key overtook defendant, pulled alongside of him, identified himself and ordered him to stop; defendant complied and upon being told to do so, got out of the car. Officer Key asked him for his identification; he said his name was Vernon Macknic. Asked if he was on parole defendant said he was, was in violation and "had been running for about nine months." It was stipulated that Officer Key is an expert in determining whether a person is under the influence of narcotics. The officer "observed that defend-

ant was perspiring profusely, that his eyes were pinpoint, and that he lacked coordination in that he was slow to move and staggered,'' and since defendant was wearing a short-sleeved shirt ''also observed numerous marking on his arms, which appeared to be needle marks''; he then formed the opinion that defendant was under the influence of narcotics and arrested him for parole violation and for driving a vehicle while under the influence of narcotics. After his arrest defendant was advised of his constitutional rights and transported to the station where a further examination of the inner portion of his left forearm revealed several tracks with scabs and marks indicating hypodermic injections, and on the back portion, an area with approximately fifteen scabs and marks varying in age from one to twenty-one days, one scab appearing to be recent or fresh. An examination of his eyes in the light accommodation test showed that they ''went from a maximum of 3.5 millimeters to 3 millimeters, with a very sluggish reaction to the light.'' As a result of these observations he formed the opinion that defendant was under the influence of narcotics.

Defendant testified that at the time of his arrest he was not under the influence of narcotics, had no trouble controlling his vehicle, had not used narcotics that day, was not addicted to heroin at that time and had his last ''fix'' a day and a half before arrest.

On his own testimony and that of Officer Key that he was driving at a normal speed and did not appear to be violating any vehicle laws before stopping at the red signal, appellant asserts that there was no probable cause either for Agent Feldman to approach him or for Officer Key to arrest him. ██ There is nothing improper about an officer stopping a motorist or a pedestrian on the streets for questioning when to a reasonable person such a course of conduct appears necessary to the discharge of his duty (*People* v. *McGlory*, 226 Cal.App.2d 762, 765 [38 Cal.Rptr. 373]; *People* v. *Alcala*, 204 Cal.App.2d 15, 20 [22 Cal.Rptr. 31]; *People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852]); and circumstances short of probable cause to make an arrest may justify such action. (*People* v. *Mickelson*, 59 Cal. 2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) Officer Key had received detailed information concerning defendant, his activities, his car and where he would be, from Officer Marinelli. ██ It is well established that police officers may rely on

information coming to them through official channels. (*People v. Ross,* 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Davis,* 205 Cal.App.2d 517, 521 [23 Cal.Rptr. 152]; *People* v. *Melchor,* 237 Cal.App.2d 685, 690 [47 Cal. Rptr. 235].)[1] When, according to the information received from Officer Marinelli, defendant appeared at the location driving the described vehicle and at the time specified, they had a right to approach him to question him when he stopped at the red signal. ■ While anonymous information in and of itself is not sufficient to constitute probable cause for arrest, such information corroborated by additional facts may be considered as a factor going to probable cause. (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36]; *People* v. *Davis,* 205 Cal.App.2d 517, 521 [23 Cal.Rptr. 152].) ■ Here those additional facts constitute Officer Key's observation of defendant's erratic use of his vehicle, physical condition, lack of coordination, "pinpoint" pupils and needle marks on his arm. When Agent Feldman approached the left side of defendant's car, defendant started up his vehicle and swerved to the left in the direction of Agent Feldman, forcing him to jump out of the way, turned right and drove away. Under these circumstances Officer Key was justified in stopping defendant. Thus when he ascertained that defendant was a parole violator and formed the opinion from defendant's appearance and conduct that he was under the influence of narcotics, it was his duty to arrest him for both violations.

■ Equating his "right" to a Nalline test when arrested with his rights "under the *Miranda* [384 U.S. 436 (16 L.Ed. 2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974)] doctrine," appellant asserts that he was denied due process of law because he was neither informed that he had a right to demand a Nalline test

[1]At the preliminary hearing on *voir dire* examination defense counsel sought to examine Officer Key relative to the reliability of Officer Marinelli. Upon objection the judge said: "The Court will, at least at this stage, permit the mere fact that the informant was a police officer from another jurisdiction to be sufficient reliability upon which this officer could act further." While the cause was submitted on the transcript of the testimony taken at the preliminary hearing, at the trial there was ample opportunity to explore the subject. Officer Key was further examined and defendant took the stand. At no time on the trial level did defense counsel raise the issue by objection or otherwise, make mention of the point, seek to examine Officer Key on the subject of Officer Marinelli's "reliability" or argue the matter to the trial judge. The court's ruling on the preliminary hearing was proper. In light of the record we deem to be unnecessary further discussion of appellant's present claim that his inquiry in the area of the reliability of Officer Marinelli as an informer was curtailed.

nor given the test which could establish his innocence. *People v. Zavala,* 239 Cal.App.2d 732 [49 Cal.Rptr. 129], relied upon by appellant, does not support his contention for therein the court concluded that while a person has no constitutional right to refuse to take a Nalline test, provided it is administered in a medically approved manner and not in a fashion that shocks the conscience or offends one's sense of justice, "he may refuse to take the test in California by reason of the enactment of section 11723, which requires written consent for the administration of the Nalline test." (P. 739.) This case recognizes neither a right to have a Nalline test nor the right upon arrest to be informed that he could have such a test. While the court in *In re Newbern,* 55 Cal.2d 508, at p. 513 [11 Cal.Rptr. 551, 360 P.2d 47], said, "The denial of an opportunity to procure a blood test on a charge of intoxication prevents the accused from obtaining evidence necessary to his defense and is a denial of due process of law entitling him to his discharge," it is clear that there is no duty or obligation upon law enforcement agencies to cause the sample to be made. (*McCormick v. Municipal Court,* 195 Cal.App.2d 819, 821 [16 Cal.Rptr. 211].) *McCormick* relied upon *In re Koehne,* 54 Cal.2d 757 [8 Cal.Rptr. 435, 356 P.2d 179]; therein the court said at page 759: "It is significant, however, that the law does not impose upon law enforcement agencies the requirement that they take the initiative, or even any affirmative action, in procuring the evidence deemed necessary to the defense of an accused. Rather it is the accused who must act to protect his interests, and it is only when he is denied an opportunity, reasonable under the circumstances, to procure a timely sample of his blood that he can properly claim a denial of due process. (*In re Newbern, supra,* 175 Cal.App.2d 862, 866 [1 Cal.Rptr. 80].)" These cases say that an accused has been denied due process when the police refuse his request to procure a chemical test at his own expense preventing him from procuring evidence. It appears to us that there is no more duty on the police to take the initiative, or any affirmative action, in procuring evidence deemed necessary to the defense of one accused of being under the influence of a narcotic drug, than there is in the case of one accused of being under the influence of alcohol. If he wants to take a Nalline test he must act to protect his own interest by requesting such a test.

However, the absence of a Nalline test has no effect on the conviction because the testimony of Officer Key was sufficient

to establish defendant's condition. "While it is true that no blood sample or other mechanical or chemical test was taken or made of the defendant to establish that his condition was the effect of the use of narcotics, this is not the only type of evidence which will sustain the finding of 'under the influence of a narcotic drug.' . . . The detailed testimony of the observable physical and mental reactive state of the defendant was testified to by police officers experienced in observing such details. The opinion as to the cause of defendant's condition, if admissible as expert opinion, was sufficient to prove the fact." (*People* v. *Smith*, 253 Cal.App.2d 711, 714-715 [61 Cal.Rptr. 557].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.