107 N.J. Super. 176 (1969)
257 A.2d 726
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DENNIS TIETZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1969.
Decided October 10, 1969.
*177 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mr. Morton Joel Goldfein, assigned attorney, argued the cause for appellant.
Mr. Arthur J. Timins, Assistant Prosecutor, argued the cause for respondent (Mr. Leo Kaplowitz, attorney; Mr. Henry W. Jaeger, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Defendant appeals from a conviction of being under the influence of a narcotic drug (N.J.S.A. 2A:170-8). The single issue before us is whether there was a denial of due process because he was examined by a police physician but not advised that he had the right to  *178 and was not afforded an opportunity to  secure a contemporaneous, independent medical examination of his own.
Defendant was arrested for "loitering" on a Plainfield, N.J. street. (This charge was later dismissed when the ordinance was declared unconstitutional.) In the course of searching defendant at headquarters, the police discovered nine cellophane packets of a "white substance" which they had reason to believe was a narcotic drug. Defendant suddenly grabbed the packets, stuffed them into his mouth and fell to the floor. The police were unable to retrieve the packets before defendant swallowed them. In view of the emergent circumstances they immediately summoned the city physician, who proceeded to examine defendant and determined that he was under the influence of a narcotic drug. Defendant was then taken to a hospital where his stomach was pumped. He was subsequently returned to the police station where he was charged with violating N.J.S.A. 2A:170-8.
The State made no attempt to introduce into evidence an analysis of the contents of defendant's stomach. He was convicted on the testimony of the doctor that he was under the influence of a narcotic drug at the time he was examined.
N.J.S.A. 2A:170-8 provides, in part,
Any person who uses or who is under the influence of any narcotic drug, as defined in article 1 of chapter 18 of Title 24 of the Revised Statutes (Food and Drugs), the uniform narcotic drug law, for a purpose other than the treatment of sickness or injury as prescribed or administered by a person duly authorized by law to treat sick and injured human beings, is a disorderly person.
In a prosecution under this chapter, it shall not be necessary for the State to prove that the accused did use or was under the influence of any specific narcotic drug or drugs, but it shall be sufficient for a conviction under this chapter for the State to prove that the accused did use or was under the influence of some narcotic drug or drugs as defined in article 1 of chapter 18 of Title 24 of the Revised Statutes (Food and Drugs), by proving that the accused did manifest physical and physiological symptoms or reactions caused by the use of any narcotic drug.
It will be seen that the statute explicitly eliminates the need for proof that the accused was using or under the influence *179 of any specific drug; it is sufficient if it can be established that he did "manifest physical and physiological symptoms or reactions caused by the use of any narcotic drug."
Defendant does not challenge the constitutionality of the statute. Nor does he address himself to the validity of the stomach pumping, a matter not involved here because the State did not rest its case on what was found in the stomach contents but on defendant's physical condition at the moment he was examined.
Defendant questions the substantiality of the doctor's testimony. The doctor testified that he had conducted some 200 examinations of a similar kind. His medical opinion that defendant was under the influence of a narcotic drug was based on a personal examination revealing fresh needle punctures on both of defendant's arms, non-reaction of his eyes to light and constricted pupils. Such expert testimony may not be faulted as to its convincingly probative value.
Defendant relies heavily upon State v. Johnson, 87 N.J. Super. 195 (Cty. Ct. 1965), and urges that the rationale of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), should be extended to require law enforcement authorities, prior to making a medical examination incident to an alleged narcotics offense, to advise the suspect as to the importance of a medical opinion and to give him the opportunity to obtain an independent examination by a physician of his own choosing.
State v. Johnson does not support defendant's present claim and is clearly distinguishable. Johnson was arrested and charged with being under the influence of a narcotic drug after he had been examined by the police department physician. He had several times requested that he be allowed to make a telephone call. The requests were denied. After he had been examined by the police physician he requested that he be examined by his own doctor. That request, too, was denied. Johnson was held in custody for 26 hours before being released. He denied using drugs and explained the *180 marks on his arms as the result of scratches received in his work as tree surgeon. His testimony went uncontradicted.
On review of his municipal court conviction the County Court held that the denial of Johnson's request for an independent examination by a physician of his own choice amounted to a denial of his constitutional rights, thereby depriving him of an opportunity to establish a defense. By contrast, defendant in the present case did not request permission to have his own doctor examine him, and there is no claim that he was kept in custody for an extended period.
Defendant insists that even though he did not request an independent examination, the police were under an affirmative duty to inform him of his "right" to call his own doctor. In support he cites the progressive protection given an accused's constitutional rights  specifically, the right to counsel and the privilege against self-incrimination  as articulated by the United States Supreme Court. He argues that the absence of a request for an independent examination did not constitute a waiver on his part, contending that the language quoted in Miranda, 384 U.S., at 472, 86 S.Ct. 1602, from the California case of People v. Dorado, 62 Cal.2d 338, 351, 42 Cal. Rptr. 169, 398 P.2d 361, 369-370 (Sup. Ct. 1965). should apply in the instant case. The Dorado court had said:
The defendant who does not ask for counsel is the very defendant who most needs counsel. We cannot penalize a defendant who, not understanding his constitutional rights, does not make the formal request and by such failure demonstrates his helplessness. To require the request would be to favor the defendant whose sophistication or status had fortuitously prompted him to make it.
In cases dealing with the right to counsel and with the privilege against self-incrimination, the United States Supreme Court was dealing with rights expressly provided in the federal Bill of Rights, and laid down procedures to guarantee their free exercise. The "right" which defendant *181 claims is not one of the fundamental rights to be found in the Federal Constitution and recognized by courts as basic to our system of justice. The question here is, broadly, one of due process: was defendant dealt with fairly and reasonably? We conclude that he was.
Defendant refers us to a number of decisions in sister states, claiming that the courts there "reversed" convictions where the accused had requested to have his own physician present when he was examined by a police doctor and such request had been denied. Among the cases cited, only Starrett v. Midwest City, 374 P.2d 777 (Okl. Ct. Crim. App. 1962), reversed a conviction on that ground. The other cases are dicta, e.g., In re Newbern, 55 Cal.2d 508, 11 Cal. Rptr. 551, 360 P.2d 43, 47 (Sup. Ct. 1961); In re Howard, 208 Cal. App.2d 709, 25 Cal. Rptr. 590 (D. Ct. App. 1966); State v. Munsey, 152 Me. 198, 127 A.2d 79 (Sup. Jud. Ct. 1956); Winston v. Commonwealth, 188 Va. 386, 49 S.E.2d 611 (Sup. Ct. App. 1948); Paul v. State, 111 Ga. App. 13, 140 S.E.2d 289 (App. Ct. 1966).
California, whose courts give strong support to procedural due process safeguards, have repeatedly held that refusal to permit an accused to obtain an independent medical examination constitutes a denial of due process by hampering him in the preparation of his defense. In re Newbern, 175 Cal. App.2d 862, 1 Cal. Rptr. 80 (D. Ct. App. 1960); McCormick v. Municipal Court, 195 Cal. App.2d 819, 16 Cal. Rptr. 211 (D. Ct. App. 1961); In re Martin, 58 Cal.2d 509, 24 Cal. Rptr. 833, 374 p.2d 80 (Sup. Ct. 1962). However, those courts do not require an affirmative duty on the part of police actively to solicit a request from an accused for an outside examination. For example, defendant in In re Koehne, 54 Cal.2d 757, 8 Cal. Rptr. 435, 356 p.2d 179 (Sup. Ct. 1960), claimed he was denied his constitutional rights because of the lack of an independent physical examination during drunken driving proceedings. The court rejected the claim, noting that the record was barren of any request by the accused and holding, in essence, that the authorities were *182 under no duty to provide for such an examination in the absence of a request:
It is significant, however, that the law does not impose upon law enforcement agencies the requirement that they take the initiative, or even any affirmative action, in procuring the evidence deemed necessary to the defense of an accused. Rather it is the accused who must act to protect his interest and it is only when he is denied * * * opportunity, reasonable under the circumstances, to procure a timely sample of his blood that he can properly claim a denial of due process.
See, also, McCormick v. Municipal Court, above, 195 Cal. App.2d at 213; 16 Cal. Rptr. 211; In re Martin, above, 58 Cal.2d 509, 24 Cal. Rptr., at 835; 374 P.2d 801; In re Newbern, above, 55 Cal.2d 508, 11 Cal. Rptr. 551, at 553, 360 P.2d 43, 47; People v. Macknic, 257 Cal. App.2d 370, 64 Cal. Rptr. 833, 836 (D. Ct. App. 1967). Although these cases dealt with convictions for driving under the influence of alcohol, the California courts have extended the same tests to narcotics charges. See People v. Macknic, at 836.
We hold that while police authorities are clearly under an obligation not to thwart the fundamental rights of an accused  specifically, his request for an independent physical examination  they are equally under no duty to construct his defense. To comport with due process the procedures followed need only be fair and reasonable, and if the evidence obtained by the police is to be challenged, it is the obligation of the accused to take affirmative action. Absent defendant's actual and reasonable request to have an independent medical examination by his own doctor, there was no constitutional requirement that the police provide such service or solicit the demand from him.
One final matter. Defendant attempts to analogize from N.J.S.A. 39:4-50.2 (c), which deals with prosecution for drunken driving, noting that it provides for an independent medical testing for intoxication by a person or physician of the driver's own choosing. N.J.S.A. 2A:170-8, under which defendant was charged, contains no such provision, *183 but specifically permits of a conviction based solely on proof that the accused manifested physical and physiological symptoms or reactions caused by the use of any narcotic drug.
The judgment of conviction is affirmed.