**STATE of Tennessee, Appellant,**

v.

**Dennis LIVESAY, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 21, 1996.

No Permission to Appeal Applied For to the Supreme Court.

Craig L. Garrett, Paine, Garrett & Bray, Maryville, for Appellee.

Charles W. Burson, Attorney General and Reporter, Eugene J. Honea, Assistant Attorney General, Nashville, Mike Flynn, District Attorney General, Phil Morton, Assistant District Attorney General, Maryville, for appellant.

## OPINION

WELLES, Judge.

This is an appeal by the State of Tennessee from an order of the trial court dismissing a charge of driving while under the influence of an intoxicant. The trial court judge dismissed the charge because he found that law enforcement authorities violated the Defendant's constitutional right to due process when they refused to allow the Defendant's personal physician to come to the jail and procure an additional sample of blood from the Defendant for the purpose of having performed an independent laboratory examination to determine his blood alcohol content. We affirm the judgment of the trial court.

The facts of this case are generally undisputed. One evening shortly before midnight, a Maryville, Tennessee police officer observed the Defendant run a red light. The officer stopped the Defendant's automobile and detected the odor of alcohol on the Defendant's breath. The officer administered field sobriety tests which the Defendant could not successfully perform. The officer offered the Defendant a choice between a breath test or a blood test. When the Defendant requested a blood test, the officer transported him to Blount Memorial Hospital for the purpose of having blood drawn. Two tubes of blood were drawn from the Defendant's arm.[1]

The Defendant was then transported to the jail, which took about five minutes. When the Defendant arrived at the jail, he asked to make a phone call and was allowed to do so. He telephoned his personal physician and requested that the doctor come to the jail to obtain an additional blood sample for analysis. When the jailer heard the Defendant's request on the phone, he told the Defendant that he could not have his doctor come to the jail to draw blood. At the Defendant's request, the jailer then took the phone and told the doctor that the Defendant could not have an additional blood sample taken at the jail. The doctor testified that he would have come to the jail and taken the

blood sample from the Defendant if he had been allowed to do so.

The order of dismissal of the trial court, after summarizing the facts as stated herein, states as follows: "The court finds, therefore, as a matter of fact that agents for the State interfered with the Defendant's right to develop and obtain what could be exculpatory evidence on his behalf, violative of the Defendant's right to due process. In that there is no way to afford the Defendant such an opportunity at present, the case is dismissed and the costs taxed to the State of Tennessee." It is from this order that the State appeals.

The State argues that the trial court erred in dismissing the charge against the Defendant because: (1) Without a showing of actual prejudice, the trial court should not have found a due process violation; and (2) even if the Defendant's due process rights were violated, the appropriate remedy would be to suppress the State's blood test results rather than dismiss the charge against the Defendant.

The legislature has provided that, when a sample of a person's blood is procured for making a test to determine the alcoholic or drug content of the blood, "the person tested shall be entitled to have an additional sample of blood or urine procured and the resulting test performed by any medical laboratory of that person's own choosing and at that person's own expense. . . ." Tenn.Code Ann. § 55–10–410(e).

It is difficult to overstate the importance of evidence of blood alcohol content in DUI prosecutions. Our supreme court recently noted that the decision of whether to take a blood alcohol test by a person suspected of DUI was "a decision having such important consequences for his or her guilt or innocence," yet the decision must be made without benefit of counsel. *State v. Frasier*, 914 S.W.2d 467 (Tenn.1996). The court further noted that any compromise of the accuracy of such a test "is a crucial consequence, given the importance of scientific evidence in DUI cases." *Id.*

---

1. The blood samples taken from the Defendant at the hospital were sent to the Tennessee Bureau of Investigation crime laboratory where a test determined the Defendant's blood alcohol content to be .11 gram percent.

This court has stated that "the defendant's greatest challenge to the accuracy of the breath test is the independent blood test to which each accused has a statutory right." *State v. Johnson*, 717 S.W.2d 298, 305 (Tenn. Crim.App.1986).

In analyzing a similar issue, this court has stated:

> It is necessary to state what this case does not involve. We are not here dealing with a case in which a defendant requests an opportunity to call his own doctor or other qualified person and have his doctor or other qualified person come to the jail or other place of incarceration and take a sample of blood. Under that described circumstance the defendant's due process rights would be violated if the police interfered with the defendant's right to obtain evidence necessary to his defense. The right of one in custody for driving under the influence to have a blood test by his own doctor or other qualified person at his own expense at the place of incarceration is well recognized by the Courts. *See, Scarborough v. State*, 261 So.2d 475 (Miss. 1972) *cert. denied* 410 U.S. 946, 93 S.Ct. 1353, 35 L.Ed.2d 613; *Brown v. Municipal Court*, 86 Cal.App.3d 357, 150 Cal.Rptr. 216 (2d Dist.1978); *State v. Lewis*, [266 S.C. 45, 221 S.E.2d 524] Supra at 526; and *In Re Koehne*, 54 Cal.2d 757, 8 Cal.Rptr. 435, 356 P.2d 179, 180–81 (1960).

*State v. Choate*, 667 S.W.2d 111, 112 (Tenn. Crim.App.1983).

■ The State argues that the Defendant's due process rights were satisfied because the Defendant could have requested that he be provided one of the samples taken at the hospital so that he could obtain independent testing of the sample. It appears that the Defendant. did not make such a request. We believe, however, that the statute gives the Defendant the right to have his own "additional" sample of blood procured for testing. Because the sample taken by the state's agents may become contaminated, be mishandled, lost or be otherwise unreliable, when the state's agents refuse to allow the Defendant to preserve such important evidence, this becomes tantamount to suppression of evidence favorable or useful to the defense. That is the *only* opportunity the Defendant has to gather that evidence.

Other states have grappled with similar statutes and similar issues. Especially in question is the possibility of due process violations in the event the police refuse access to a private test. This topic was addressed in an annotation which stated:

> In a number of cases it has been held or stated that constitutional due process requires that a motorist charged with an alcohol-related driving offense be afforded a reasonable opportunity to obtain a private sobriety test.

> Ariz—*McNutt v. Superior Court of Arizona* (1982) 133 Ariz 7, 648 P2d 122.

> *Smith v. Cada* (1977, App) 114 Ariz 510, 562 P2d 390; *Smith v. Ganske* (1977, App) 114 Ariz 515, 562 P2d 395; *Amos v. Bowen* (1984, App) 143 Ariz 324, 693 P2d 979.

> Cal—*Re Martin* (1962) 58 Cal 2d 509, 24 Cal Rptr 833, 374 P2d 801; *Kesler v. Department of Motor Vehicles* (1969) 1 Cal 3d 74, 81 Cal Rptr 348, 459 P2d 900, cert den 397 US 989, 25 LEd2d 396, 90 S Ct 1121.

> *Brown v. Municipal Court for Los Angeles Judicial Dist.*, (1978, 2d District) 86 Cal App 3d 357, 150 Cal Rptr 216.

> Me—*State v. Munsey* (1956) 152 Me 198, 127 A.2d 79 (ovrld on other grounds *State v. Copeland* (Me) 391 A2d 836 (superseded by statute as stated in *State v. Pineau* (Me) 491 A2d 1165)).

> Mo—*State v. Snipes* (1972, Mo) 478 SW2d 299, cert den 409 US 979, 34 LEd2d 242, 93 S Ct 332.

> Tenn—*State v. Choate* (1983, Tenn Crim) 667 SW2d 111.

John P. Ludington, Annotation, *Drunk Driving: Motorist's Right to Private Sobriety Test*, 45 A.L.R.4th 11, 21 (1986).

In *Brown v. Municipal Court of Los Angeles Judicial District*, 86 Cal.App.3d 357, 150 Cal.Rptr. 216 (Ct.App.1978), the California Court of Appeals dealt with a situation in which an individual was in custody for driving under the influence and was taken to the police station where his blood alcohol level was determined. After the test was adminis-

tered, the officer took him to the hospital for a physical examination for possible neck injuries. While at the hospital, the individual stated that he wanted a blood test taken and offered to pay for it. The officer refused to allow the test and told the arrestee that he. could get the test after he had been released from custody. The California Court of Appeals stated:

> The denial of an opportunity to procure a blood test on a charge of intoxication prevents the accused from obtaining evidence necessary to his defense, and is a denial of due process of law. (*In re Newbern* (1961) 55 Cal.2d 508, 513, 11 Cal.Rptr. 551, 360 P.2d 47.) While there is no duty or obligation on law enforcement officers to administer a blood test (*In re Koehne* (1960) 54 Cal.2d 757, 759, 8 Cal.Rptr. 435, 356 P.2d 179; *McCormick v. Municipal Court* (1961) 195 Cal.App.2d 819, 821, 16 Cal. Rptr. 211), in no event can an officer frustrate the reasonable efforts of an accused to obtain a timely sample of his blood without denying him due process of law. (*In re Martin* (1962) 58 Cal.2d 509, 512, 24 Cal.Rptr. 833, 374 P.2d 801).

*Id.* 150 Cal.Rptr. at 219. We agree with the California Court of Appeals.

We, therefore, have no hesitancy in following this court's reasoning in *State v. Choate*, 667 S.W.2d 111 (Tenn.Crim.App.1983), and conclude that under the facts and circumstances presented herein, the Defendant's due process rights were violated when the police interfered with the Defendant's attempt to obtain evidence necessary to his defense.

Our supreme court recently held that a person's refusal to take a blood-alcohol test may be admitted as evidence against the person at trial. *Frasier*, 914 S.W.2d at 471. Obviously, if the person submits to the State's test, the results are admissible. If the person is not allowed to procure his own sample for testing, the State's proof becomes irrefutable, even if the test result is in fact unreliable for any of a variety of reasons.

▇ We also note that the interference with the Defendant's statutory and due process rights to obtain this evidence was intentional on the part of law enforcement authorities. We do not believe that simply suppressing the State's blood alcohol test is a sufficient safeguard of the Defendant's right to be able to gather and preserve evidence in his defense. This evidence, if favorable to the Defendant, could easily have secured his acquittal.

Many other courts agree that suppression of the blood alcohol test is not a sufficient safeguard of the Defendant's rights in all cases. The Supreme Court of Massachussetts states:

> In determining the appropriate remedy for a violation of G.L. c. 263, § 5A, we consider the conduct of the police, the exigent circumstances of the particular case, and other admissible evidence of the defendant's guilt. [*Commonwealth v.*] *Rosewarne*, [ ] 410 Mass. [53] at 57, 571 N.E.2d 354 [ (1991) ]. [*Commonwealth v.*] *Kelley*, [ ] 404 Mass. [459] at 464, 535 N.E.2d 1251 [ (1989) ]. Dismissal may be deemed appropriate where there is deliberate or intentional misconduct by the police. *Commonwealth v. Manning*, 373 Mass. 438, 443, 367 N.E.2d 635 (1977). In cases arising under c. 263, § 5A, we must consider the purpose of the statute, namely, to give the defendant a reasonable opportunity to obtain his own evidence, available only for a short period of time, regarding his alleged intoxication. *Commonwealth v. Marley*, 396 Mass. 433, 443, 486 N.E.2d 715 (1985) (Liacos, J., concurring). *Commonwealth v. Andrade*, 389 Mass. 874, 881, 453 N.E.2d 415 (1983). Thus, the remedy must be "adequate to cure potential or actual prejudice resulting from a violation of G.L. c. 263, § 5A," given the particular facts of the case. *Andrade*, supra at 878–879, 881–882, 453 N.E.2d 415.

*Commonwealth v. Hampe*, 419 Mass. 514, 646 N.E.2d 387 (1995).

In *McNutt v. Superior Court of Arizona*, 133 Ariz. 7, 648 P.2d 122 (1982), a defendant was arrested on suspicion of DWI. He was taken to the police station and asked to call his lawyer and asked for a blood test after the police had given him a breath alcohol test. *Id.* 648 P.2d at 124. The officers refused both requests, but did allow him to call

his ex-wife. He was released to his ex-wife about two to two and a half hours after he was stopped. *Id.* The Supreme Court of Arizona stated, "Dismissal of the case with prejudice is the appropriate remedy because the state's action foreclosed a fair trial by preventing petitioner from collecting exculpatory evidence no longer available. *See Smith v. Cada,* 114 Ariz. 510, 562 P.2d 390 (App. 1977)." *Id.*

The same is true in the case *sub judice.* We, therefore, are unable to conclude that the trial judge erred in dismissing the charge against the Defendant. The judgment of the trial court is affirmed.

JONES, P.J., and PEAY, J., concur.