**FILED**

December 17, 1997

Cecil W. Crowson
Appellate Court Clerk

**IN THE CRIMINAL COURT OF APPEALS OF TENNESSEE**

**AT NASHVILLE**

SEPTEMBER 1997 SESSION

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9608-CC-00377 |
| | ) | |
| vs. | ) | Williamson County |
| | ) | |
| **MARK BATEMAN,** | ) | Honorable Cornelia A. Clark, Judge |
| | ) | |
| Appellant. | ) | (Driving While Under the Influence) |
| | ) | |

FOR THE APPELLANT:

E. Covington Johnston
136 Fourth Avenue South
Franklin, TN 37064

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

DARYL J. BRAND
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

JOSEPH D. BAUGH
District Attorney General

MARK PURYEAR
Assistant Dist. Attorney General
P.O. Box 937
Franklin, TN 37065-1608

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT, JUDGE

**OPINION**

The defendant, Mark Bateman, appeals his Williamson County Circuit Court conviction for driving under the influence of an intoxicant. Having been convicted in a bench trial of violating Tennessee Code Annotated section 55-10-401, the defendant received a six-month sentence which was fully suspended after he served five days, day-for-day, in the county jail. He was placed on unsupervised probation for eleven months, twenty-nine days, fined $350, and had his driver's license revoked for a year. On appeal, the defendant complains that (1) the results of the breath-alcohol test should have been excluded from the evidence and (2) the indictment should have been dismissed because the defendant was denied the opportunity to receive an independent blood-alcohol test. After review of the record and the briefs submitted by the parties, we affirm the judgment of the trial court.

The defendant wrecked his automobile on Highway 96 East in Williamson County. When a state trooper arrived at the scene of the one-car accident, the defendant was alone and admitted he was driving. The trooper, an experienced officer, testified without objection that, contrary to the defendant's version of the accident that a tire blew out and caused him to wreck, the accident appeared to have been caused when the defendant drove off the edge of the pavement and lost control of his vehicle, causing him to careen across the road, travel down an embankment, and collide with some trees. The trooper testified the defendant seemed disoriented, smelled of alcohol, and, while being questioned, the defendant vomited. After first denying he had been drinking, the defendant then admitted drinking a beer. The trooper asked the defendant to perform the one-legged stand, a field sobriety test. The defendant attempted to perform as instructed but was unable to stand alone and had to be assisted by the officer to prevent his falling. The trooper testified that, in his opinion, the defendant was "extremely intoxicated." The trooper arrested the defendant and transported him to the jail. During the trip, the defendant became loud and belligerent, causing the

2

trooper to stop and place handcuffs on the defendant.

After arriving at the jail, the defendant signed an implied consent form for a breath-alcohol test. The trooper was asked on cross-examination, "Did [the defendant] ask you about the blood test?" The officer testified he told the defendant that the defendant could go to the Williamson County Hospital to take his own blood-alcohol test at his own expense. The trooper testified the defendant was not asked to rinse his mouth between the vomiting and the administering of the breath-alcohol test on the Intoximeter 3000 machine, nor did the defendant request the opportunity to rinse his mouth. The trooper observed the defendant from 11:57 p.m. until 12:21 a.m. prior to administering the test. During this time, the defendant did not belch, eat, drink, vomit or have foreign matter in his mouth.[1] The test was administered and yielded a result of .15. The defendant offered no proof at the trial.

Prior to trial, the defendant challenged, through motions that appear in the technical record, the admissibility of the breath-alcohol test result, and further, he moved the dismissal of the indictment on the grounds that he was denied the right to obtain an independent blood test. The trial court overruled these motions after a hearing, but the proceedings and any evidence adduced during the hearing were not preserved in the record on this appeal.

At the conclusion of the bench trial, the trial judge found the defendant guilty of driving under the influence so as to be impaired, and she further found that, in addition to the breath-alcohol test result of .15, which she acknowledged to be "just an inference," there was independent circumstantial evidence of the defendant's guilt, including the smell of alcohol on his person; the likelihood the

---

[1]The trooper also testified the machine was functioning properly, he was a certified operator, and all operational procedures were followed. The defendant has raised no issue concerning any of these aspects of the test.

impairment caused the accident, in view of the defendant's untruthfulness about the cause; the defendant's sickness and vomiting; his inability to ambulate without the officer's assistance; his failure of the field sobriety test; and his bizarre behavior during the trip to the jail.

We review this case upon the record preserved from the bench trial. As noted above, the record does not include the proceedings upon the defendant's motion to suppress and motion to dismiss. To the extent the defendant is challenging the trial court's disposition of these motions, his challenge fails at this point.

It is the appellant's duty to ensure that the record on appeal contains all of the evidence relevant to those issues which are the bases of appeal. Tenn. R. App. P. 24(b); State v. Deborah Gladish, No. 02C01-9404-CC-00070, slip op. at 14-15 (Tenn. Crim. App., Jackson, Nov. 21, 1995), perm. app. denied (Tenn. 1996); State v. Banes, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993). In the absence of such a record, the affected issues are waived. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." Id.

We point out, however, that the defendant also objected at trial to the introduction of the breath-alcohol test results. Giving the defendant the benefit of the doubt, we will treat the objection as embracing both issues now raised on appeal; however, the only evidence in the record which bears upon either issue is the trial testimony of the trooper.

The defendant's complaint about the breath test procedure is predicated upon his claim that the breath sample taken subsequent to the vomiting and without a rinsing of his mouth was flawed and should be suppressed. He bases

4

his argument upon our supreme court's holdings in State v. McCaslin, 894 S.W.2d 310 (Tenn. Crim. App. 1994) and State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). In Sensing, the test products of the Intoximeter 3000, the machine used to test the defendant in the present case, were held to be admissible without the necessity of a certified operator testifying as to his knowledge of the "scientific technology involved in the function of the machine," so long as the operator-witness could testify to prescribed operational or procedural facts, including the taking of certain precautions to assure the validity of the subject's breath sample. Sensing, 843 S.W.2d at 416. These precautions are "that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate." Id. In McCaslin, the DUI conviction was reversed, based upon the officer's failure to comply with the twenty-minute rule in that the accused was observed for only sixteen minutes. McCaslin, 894 S.W.2d at 311. This court held that "the requirements established in Sensing are a condition precedent to the admissibility of breath test results." Id. at 312.

We acknowledge the rule of McCaslin that the Sensing safeguards go to the admissibility, rather than the weight, of the offered test results; however, unlike McCaslin where there was an undisputed failure to observe the defendant for the required twenty minutes, in the present case there is no proven violation of the Sensing requirements. It is uncontroverted that the observation in excess of twenty minutes occurred and that during the observation period none of the invalidating events occurred. Of course, it is also uncontroverted that the defendant vomited approximately one hour prior to taking the test, but Sensing does not purport to invalidate a breath test result because the subject vomited at any time prior to taking the test. Common sense indicates that the selection of the twenty-minute precautionary period was judiciously imposed to protect against the skewing of test results due to recent digestive episodes experienced by the accused. Obviously, other such episodes may well have occurred before the arrival and the supervisory

5

presence of the officer. The possibility of these more remote episodes are taken into account by the adoption of the twenty-minute rule and are, therefore, irrelevant for our purposes, especially in the absence of proof showing that the vomiting actually caused some defect in the test results. There being no showing in the record that the test result was otherwise flawed, we affirm the trial court in overruling the Sensing-based objection to the admissibility of these breath-test results.

Furthermore, had error been committed in allowing this evidence, we are certain that any such error would have been harmless. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). We are aware that in McCaslin this court reversed the trial court and declined to find harmless error in the wake of the Sensing violation. McCaslin, 894 S.W.2d at 312. However, in McCaslin, we pointed out the difficulty in determining "the weight, if any, given by a jury to an item of evidence." Id. (emphasis added). Also, the McCaslin jury was charged under Tennessee Code Annotated section 55-10-408(b) (1993) (being the predecessor provision to current section 55-10-408(a)) that the test results created a rebuttable presumption of intoxication, as opposed to a mere inference. See Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450 (1979); State v. Coker, 746 S.W.2d 167, 170 (Tenn. 1987) (invalidating the use of the word "presumption" in jury instructions). However, in the present case, the trial judge was the trier of fact, and she affirmatively acknowledged that (1) the effect of Tennessee Code Annotated section 55-10-408(a) is to supply an inference only, and (2) there was evidence independent of the test result sufficient to convict the defendant. The record supports the trial court in this last observation, and consequently, unlike the situation in McCaslin, we can discern the extent to which the trier of fact relied upon the test results. Had there been any Sensing error, it could not be viewed as affecting the outcome. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

The defendant next asserts that he was denied his right to obtain a blood test. See Tenn. Code Ann. § 55-10-410(e) (Supp. 1997). However, the only

6

evidence before us is the trooper's testimony, and the extent of that testimony on the subject is the trooper's answer to the question, "Did [the defendant] ask you about the blood test?" The trooper acknowledged the question and testified he told the defendant that he could obtain his own blood test at the Williamson County Hospital. The trooper denied that the defendant requested a blood test in lieu of a breath test. As such, the record reveals no request nor demand for a blood test. If the defendant had a desire to receive a blood test, the record does not reflect that he made his desire known or that he otherwise did or said anything to initiate the procedure for the blood test.

We recognize that, apart from section 55-10-410(e), a defendant's "due process rights [are] violated when the police interfere[ ] with the Defendant's attempt to obtain evidence necessary to his defense." State v. Livesay, 941 S.W.2d 63, 66 (Tenn. Crim. App. 1996) (emphasis added). In Livesay, the DUI arrestee requested his doctor to come to the jail in order to administer an independent blood test, but the police disallowed the test. In holding that this action of the police denied the accused his due process of law, we acknowledged that "'there is no duty or obligation on law enforcement officers to administer a blood test,'" as long as they do not "'frustrate the reasonable efforts of an accused to obtain a timely sample of his blood....'" Livesay, 941 S.W.2d at 66 (quoting with approval Brown v. Municipal Court, 86 Cal. App. 3d 357, 150 Cal. Rptr. 216, 219 (1978)) (internal citations omitted) (emphasis added).

In the present case, there is no evidence in the record that the officer(s) hampered or obstructed any effort by the defendant to obtain a blood test. Moreover, there is no evidence that the defendant made any effort to obtain the test. As such, the facts of the case fit more neatly within the language of State v. Choate, 667 S.W.2d 111 (Tenn. Crim. App. 1983). In Choate, we affirmed the DUI conviction and recognized the due process right of a DUI arrestee to obtain his own blood test at the place of incarceration and that the right would be violated if the

police interfered with the exercise of it. Choate, 667 S.W.2d at 112. It was pointed out in Choate that the defendant did not request the opportunity to summon his doctor or otherwise to obtain a blood test. We adopted the trial court's language which in part provided:

> "There is no proof in the record that the police officers said anything or did anything to indicate that they would interfere with the defendant if he wanted to call a doctor or other qualified person to come down to the jail and take a sample of his blood for testing. Clearly there was no interference with the right of or the ability of the defendant to have his own chosen test conducted at his own expense at the place of incarceration."

Choate, 667 S.W.2d at 113. We held there was no affirmative obligation on the police to make a blood test available to the accused. Id. That holding controls the result in the present case. Based upon the proof in the record, there is no violation of the defendant's statutory or due process rights.

The judgment of the trial court is affirmed.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
GARY R. WADE, JUDGE

_____
THOMAS T. WOODALL, JUDGE