IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 19, 2016 Session

**STATE OF TENNESSEE v. TEDD A. TJORNHOM**

**Appeal from the Circuit Court for Williamson County**
**No. II-CR127684   Deanna B. Johnson, Judge**
_____

**No. M2015-02207-CCA-R9-CD – Filed August 1, 2017**
_____

The Appellee, Tedd A. Tjornhom, was charged in the Williamson County Circuit Court with driving under the influence (DUI) and DUI per se and filed a motion to suppress his blood alcohol report due to the State's destruction of his blood sample. The Williamson County Circuit Court granted the motion, and the State appeals. Based upon the oral arguments, the record, and the parties' briefs, the order of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 9; Order of the Circuit Court Reversed, Case Remanded**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Kim R. Helper, District Attorney General; and Tristan Poorman, Assistant District Attorney General, for the appellant, State of Tennessee.

Rob McKinney, Nashville, Tennessee, for the appellee, Tedd A. Tjornhom.

**OPINION**

**I. Factual Background**

On June 1, 2013, the Appellee was arrested for DUI, and his blood was drawn for a blood alcohol test. On July 9, 2013, the Tennessee Bureau of Investigation (TBI) issued an Official Alcohol Report, showing that the Appellee's blood alcohol content was 0.11 gram percent. The report noted that the evidence "will be destroyed after 60 days."

On December 2, 2013, the Williamson County Grand Jury indicted the Appellee for DUI and DUI per se, Class A misdemeanors.[1]

On August 14, 2014, Judge Timothy L. Easter filed an agreed order for independent testing of the Appellee's blood sample by Asperian Laboratory Solutions in Opelika, Alabama. On October 20, 2014, the Appellee filed a motion to dismiss the indictment on the basis that his blood sample had been destroyed in July 2014. The Appellee alleged in the motion that he had requested independent testing of the blood twice in May 2014. In support of his claim, he attached to the motion facsimiles sent by defense counsel to the district attorney's office in May 2014, requesting that the assistant district attorney sign the agreed order ultimately filed by the trial court in August 2014.

On October 27, 2014, Judge Walter C. Kurtz held a hearing on the motion. During the hearing, defense counsel advised the trial court that he filed a discovery request for "Brady material" on March 4, 2014. Moreover, he tried to obtain independent testing of the Appellee's blood sample prior to the August 2014 agreed order. Defense counsel referred the trial court "to the filing of [counsel's] motion of the agreed order and fax sheets that went back and forth" between counsel and the district attorney's office in May 2014. Counsel explained to the court that the assistant district attorney did not sign the agreed order until sometime in August 2014 and that Judge Easter filed the order on August 14, 2014. However, while counsel was arranging for independent testing of the Appellee's blood sample, he learned from a TBI special agent that the TBI had destroyed the sample in July 2014. Counsel said he was not accusing the district attorney's office of wrongdoing but requested that the trial court dismiss both charges based on the State's withholding exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963), or, at the very least, provide the jury with a missing evidence instruction pursuant to State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999). The State argued that the Appellee could have filed a motion for independent testing the day after his arrest, that "an eight-month gap" existed between the July 2013 Official Alcohol Report and the May 2014 requests for independent testing, and that "[i]t's really the defendant's fault, in the State's mind, that [he] did not request this remedy earlier."

The trial court first ruled that the case did not involve a Brady violation because the Appellee's blood test result of 0.11 gram percent was not exculpatory. The court then stated that while the case did involve "a Ferguson issue about the obligation of the State to preserve evidence," this court held in State v. John N. Moffitt, No. W2009-02286-CCA-R3-CD, 2010 WL 5274049 (Tenn. Crim. App. at Jackson, Dec. 15, 2010), and State v. Gary C. Bullington, No. M2005-02227-CCA-R3-CD, 2006 WL 1816325 (Tenn.

---

[1]Generally, a person commits DUI based on impairment when the person drives or is in physical control of a vehicle on any public road in this state while the person is under the influence of an intoxicant. Tenn. Code Ann. § 55-10-401(a)(1). A person commits DUI per se when the person drives or is in physical control of a vehicle on any public road in this state while the alcohol concentration of the person's blood is .08 percent or more. Tenn. Code Ann. § 55-10-401(a)(2).

Crim. App. at Nashville, June 27, 2006), perm. app. denied, (Tenn. Oct. 30, 2006), that "the TBI's routine of destroying [blood] after 60 days presents no problem under the circumstances here." The court found that given the amount of time between the Appellee's arrest and his first request for testing, he was not entitled to dismissal of the indictment. In a written order, the trial court reiterated that the Appellee was not entitled to relief because the evidence did not possess any exculpatory value prior to its destruction and because he "failed to demonstrate that the destruction of the evidence affected his right to a fair trial pursuant to State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999)."

On May 29, 2015, the Appellee filed a second motion to dismiss the indictment or, in the alternative, suppress the Official Alcohol Report based upon the destruction of the blood sample. Unlike the first motion, the Appellee argued in the second motion that the State had a statutory duty to preserve the sample pursuant to Tennessee Code Annotated section 55-10-408(e). At the outset of the August 31, 2015 hearing on the motion before Judge Deanna B. Johnson, defense counsel advised the trial court that the parties were stipulating that "the Tennessee Bureau of Investigation destroyed Mr. Tjornhom's blood sample after we entered an agreed -- or proposed an agreed order to preserve the sample for testing." Defense counsel asserted that the issue was one of equal protection and separation of powers in that the State had a duty to preserve the sample for independent testing by the Appellee because the legislature mandated the right to testing in Tennessee Code Annotated section 55-10-408(e). The State argued that the instant case was "identical" to Bullington in which this court stated that the defendant was not entitled to relief because he requested independent testing of his blood sample more than fourteen months after his arrest and the sample already had been destroyed.

On September 2, 2015, the trial court filed an order granting the Appellee's motion to suppress the test results but denying his motion to dismiss the indictment. In the order, the court first stated that it was barred by res judicata from considering the issue as a due process violation. The court then stated that was it going to consider the issue as a separation of powers violation and quoted Tennessee Code Annotated section 55-10-408(e), which provides:

> The person tested shall be entitled to have an additional sample of blood or urine procured and the resulting test performed by any medical laboratory of that person's own choosing and at that person's own expense; provided, that the medical laboratory is licensed pursuant to title 68, chapter 29.

The court held that statute required the State to maintain a defendant's blood sample for a certain amount of time for independent testing by the defendant and that the legislature, not the TBI, should determine that amount of time. The court stated that the statute did not provide a remedy for the State's failure to maintain the Appellee's sample, that case

law did not provide a remedy, and, therefore, that the court would have to fashion its own remedy. The court ruled that the Appellee was entitled to suppression of the blood alcohol test results because he requested independent testing of his blood sample on May 8 and May 14, 2014, while his sample still existed. After the trial court filed the order denying the Appellee's motion to dismiss but granting his motion to suppress, the trial court and this court granted the State's request to pursue an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

## II. Analysis

The State contends that the trial court erred by granting the Appellee's motion to suppress because the court's interpretation of Tennessee Code Annotated section 55-10-408(e) was not supported by case law and because the Appellee waited until May 2014 "before beginning efforts to have the sample in the State's possession tested." The Appellee maintains that the State was required to preserve his sample for testing pursuant to Tennessee Code Annotated section 55-10-408(e). We disagree with the Appellee.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Initially, we note that Judge Kurtz considered the issue as a due process violation under Ferguson and that the Appellee did not file an application for interlocutory appeal from the trial court's denial of his motion to dismiss the indictment. Judge Johnson did not address the destruction of the blood sample as a due process violation, concluding that she was prohibited from doing so by Judge Kurtz's order. Thus, the only issue before us is whether Judge Johnson correctly interpreted Tennessee Code Annotated section 55-10-408(e) as providing the Appellee with a statutory right to testing of the State's sample and, if so, whether the State's loss of the sample pursuant to the TBI's sixty-day policy violated that right.

When reviewing issues of statutory construction, we conduct a de novo review of the trial court's rulings without any presumption of correctness. See Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009). "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use . . . without reference to the broader statutory intent, legislative history, or other sources." Id. Our goal is to

"ascertain and give effect to [the] legislative intent without broadening the statute beyond its intended scope." Id. Additionally, "[w]e must presume that the General Assembly is aware of prior enactments and decisions of the courts when enacting legislation." Id. Moreover, we presume that the legislature says what it means and means what it says. State v. Marise, 197 S.W.3d 762, 766 (Tenn. 2006).

Tennessee Code Annotated subsections 55-10-408(a) thru (d) set out the procedure for the State's collecting blood from a defendant suspected of DUI, testing the blood, and reporting test results. Subsection (e) then provides as follows:

> The person tested shall be entitled to have an additional sample of blood or urine procured and the resulting test performed by any medical laboratory of that person's own choosing and at that person's own expense; provided, that the medical laboratory is licensed pursuant to title 68, chapter 29.

Webster's Unabridged Dictionary defines "additional" as "added; more; supplementary." Random House Webster's Unabridged Dictionary 23 (2d ed. 1998). Likewise, Oxford Dictionaries defines "additional" as "[a]dded, extra, or supplementary to what is already present or available." Oxford Dictionaries Online, https://en.oxforddictionaries.com/definition/additional (last visited July 24, 2017). Thus, according to the plain language of the statute, the sample collected for testing by a defendant is not the sample collected for testing by the State.

Our supreme court has addressed a defendant's right to procure his own sample of blood for independent testing pursuant to Tennessee Code Annotated section 55-10-408(e). In State v. Livesay, 941 S.W.2d 63, 65 (Tenn. Crim. App. 1996), the court said that the statute "gives [a defendant] the right to have his own 'additional' sample of blood procured for testing." Moreover, the sample must be collected for the Appellee at or near the time the State procures its own sample for testing. See id. at 66 (acknowledging that an officer cannot "'frustrate the reasonable efforts of an accused to obtain a timely sample of his blood without denying him due process of law'" (quoting Brown v. Mun. Court, 150 Cal. Rptr. 216, 219 (Cal. Ct. App. 1978))). As our supreme court explained,

> Because the sample taken by the state's agents may become contaminated, be mishandled, lost or be otherwise unreliable, when the state's agents refuse to allow the Defendant to preserve such important evidence, this becomes tantamount to suppression of evidence favorable or useful to the defense. That is the only opportunity the Defendant has to gather that evidence.

Id. (Emphasis original).

Based on the foregoing, we conclude that the Appellee's reliance on Tennessee Code Annotated section 55-10-408(e) is misplaced and that the trial court erred in its interpretation of the statute. The statute does not give a defendant the right to test the sample of blood collected and tested by the State and, therefore, the TBI's destruction of the sample pursuant to its sixty-day policy also does not violate the statute. Accordingly, the trial court's order granting the Appellee's motion to suppress the blood test results is reversed.

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, the order of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
NORMA MCGEE OGLE, JUDGE